[ORAL ARGUMENT NOT SCHEDULED]

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| Jacqueline Halbig, *et al.*,<br><br>       Plaintiffs-Appellants,<br><br>v.<br><br>Kathleen Sebelius, in her official capacity as Secretary of Health and Human Services, *et al.*,<br><br>       Defendants-Appellees. | No. 14-5018 |

## OPPOSITION TO MOTION FOR EXPEDITION

## INTRODUCTION AND SUMMARY

Defendants-appellees, the Secretary of Health and Human Services, *et al.*, respectfully oppose plaintiffs-appellants' motion for expedition.

Under the Patient Protection and Affordable Care Act ("Affordable Care Act" or "ACA"), "most Americans must either obtain minimum essential health insurance coverage or pay a tax penalty imposed by the Internal Revenue Service." District Court Opinion ("Op.") 2 (citing 26 U.S.C. § 5000A; *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2580 (2012) ("*NFIB*")). As relevant here, the Act provides for the establishment of health insurance Exchanges "through which individuals can purchase competitively-priced health insurance," *id.* at 3, and "authorizes a federal tax credit for

many low- and middle-income individuals to offset the cost of insurance purchased on these Exchanges." *Ibid.* (citing 26 U.S.C. § 36B).

Section 1311 of the ACA provides that "'[e]ach State shall, not later than January 1, 2014, establish an American Health Benefit Exchange (referred to in this title as an 'Exchange')[.]'" Op. 4 (quoting ACA § 1311(b)(1), *codified at* 42 U.S.C. § 18031(b)(1)). "If, however, a state decides not to establish its own Exchange, or fails to establish an Exchange consistent with federal standards, Section 1321 of the Act directs HHS to step in and establish 'such Exchange' in that state." *Ibid.* (quoting ACA § 1321(c)(1), *codified at* 42 U.S.C. § 18041(c)(1)).

Plaintiffs in this action are four individuals, a group of affiliated restaurants, and two other employers. Op. 8 n.3. They contend that the Affordable Care Act authorizes federal tax credits only for insurance purchased on state-run Exchanges and not for insurance purchased on federally-run Exchanges. On cross-motions for summary judgment, the district court found that one of the plaintiffs—David Klemencic—had standing to bring suit. Op. 10-11. Rejecting plaintiffs' argument on the merits, the court explained that plaintiffs offered an argument based on the language of one phrase in 26 U.S.C. § 36B, without reference to the rest of that provision or other provisions of the statute. The court concluded that, "while there is more than one plausible reading of the challenged phrase in Section 36B when viewed in isolation, the cross-referenced sections, the surrounding provisions, and the ACA's structure and purpose all evince Congress's intent to make premium tax credits available on both

2

state-run and federally-facilitated Exchanges." Op. 35. Thus, the court rejected plaintiffs' challenge to the Department of the Treasury's implementing regulations, concluding that "the intent of Congress is clear at *Chevron* step one." *Ibid*.

Plaintiffs have appealed, and they ask this Court to establish a highly accelerated briefing schedule and to schedule oral argument "as soon as practicable, before March 31, 2014," Mot. 4, which is the last day of this year's open enrollment period on the Exchanges. *See* 45 C.F.R. § 155.410(b). Although plaintiffs assert that the case must not only be argued but also resolved by that date, *see* Mot. 3, they offer no plausible reason for this demand. Plaintiffs argue that, absent a ruling from this Court, Mr. Klemencic—the only plaintiff found to have standing—"will be forced either to purchase a product" he does not want or else incur a tax penalty. Mot. 3. Mr. Klemencic was a plaintiff in *NFIB v. Sebelius*, 132 S. Ct. 2566 (2012), where he unsuccessfully argued that Congress lacked the power to give him only those two options. At this juncture, he argues that, in fact, his income would be low enough to exempt him from making that choice if he were unable to obtain the premium tax credits provided by the statute. Because he expects to receive such tax credits, his choice is to "purchase subsidized health insurance, estimated at approximately $20 per year," or else "pay some higher amount per year as a Section 5000A tax penalty." Op. 11. Plaintiffs argue that, if the premium tax credits were unavailable to Mr. Klemencic, he could remain uninsured without incurring a tax penalty. Mot. 13-14.

3

Even assuming for present purposes that these submissions are sufficient to establish standing, they do not suggest a need for radical expedition. If Mr. Klemencic does not wish to pay $1.70 per month for health insurance, *see* Op. 11, he can incur the tax penalty estimated to be about $12 per month, seek to recover the tax penalty in a taxpayer refund suit, and present his argument in that context. R.46 at 45-46 (transcript of oral ruling denying plaintiffs' motion for a preliminary injunction).

Plaintiffs' assertions regarding the benefit to the general public of a "definitive resolution" by March 31 are equally unpersuasive. Mot. 11. An intermediate appellate court cannot "definitively" resolve an issue for the entire Nation. In any event, the uncertainty that plaintiffs posit does not exist; the district court rightly concluded that their arguments have no merit. Finally, plaintiffs are wrong to assign special significance to March 31, which is the last day of the open enrollment period for 2014. By that date, most persons seeking to purchase insurance on the Exchanges by the March 31 deadline presumably will have done so.

In sum, plaintiffs have not demonstrated grounds for their expedition request. The scheduling of the case is, of course, a matter within this Court's discretion, but we respectfully ask that any schedule afford the appellees the customary time for preparation of their brief.

# BACKGROUND

A.   **Statutory Background**

The Affordable Care Act was enacted to increase access to affordable health coverage and thus to affordable health care.  Most Americans with private health coverage receive that coverage through employment-based group health plans, and Congress has long subsidized such group health plans through favorable federal tax treatment.  *See* Congressional Budget Office ("CBO"), *Key Issues in Analyzing Major Health Insurance Proposals* 31 (2008) (federal tax subsidies for employment-based group health plans totaled $246 billion in 2007).  In provisions designed to provide "Affordable Coverage Choices for All Americans," ACA Title I, Subtitle E, Congress extended favorable federal tax treatment to coverage obtained in the non-group market by authorizing federal premium tax credits for many low- and middle-income individuals who purchase health coverage on the health insurance Exchanges authorized by the Act.  *See* ACA § 1401 (adding Section 36B of the Internal Revenue Code, *codified at* 26 U.S.C. § 36B).

An Exchange is "an organized and transparent 'marketplace for the purchase of health insurance' where individuals and employees (phased-in over time) can shop and compare health insurance options."  H.R. Rep. No. 111-443, pt. II, at 976 (March 17, 2010) (citation omitted).  CBO projected that 83% of people who buy non-group policies through Exchanges will receive premium tax credits, *see Analysis of the Major Health Care Legislation Enacted in March 2010*, Tbl. 3, at 18-19 (Mar. 30, 2011) (20 million

5

of 24 million people), and that these tax credits, on average, will cover nearly two-thirds of the premium, *see Analysis of Health Insurance Premiums Under the Patient Protection and Affordable Care Act* 6 (Nov. 30, 2009).

Section 1311 of the Affordable Care Act provides that "[e]ach State shall, not later than January 1, 2014, establish an American Health Benefit Exchange (referred to in this title as an 'Exchange')[.]"  ACA § 1311(b)(1), *codified at* 42 U.S.C. § 18031(b)(1)). If, however, a state decides not to establish its own Exchange, or if the Secretary of Health and Human Services has determined that the state will not establish an Exchange that is consistent with federal standards, Section 1321 of the Act provides that the Secretary of Health and Human Services "shall . . . establish and operate such Exchange within the State[.]"  ACA § 1321(c)(1), *codified at* 42 U.S.C. § 18041(c)(1).

"While sixteen states and the District of Columbia have elected to set up their own Exchanges, thirty-four states rely on federally-facilitated Exchanges."  Op. 4. "Seven of these thirty-four states have chosen to assist the federal government with its operation of federally-run Exchanges, while twenty-seven states have declined to undertake any aspect of Exchange implementation."  *Ibid.*

### B. Factual Background And District Court Proceedings

**1.**  Plaintiffs are four individuals, joined by a group of affiliated restaurants and two other employers.  *See* Op. 8 n.3.  They contend that the Affordable Care Act authorizes federal premium tax credits only for insurance purchased on state-run Exchanges and not for insurance purchased on federally-run Exchanges.

6

The government moved to dismiss the complaint on standing, ripeness, and other threshold grounds. *See* R.23. In response, one of the individual plaintiffs, David Klemencic, submitted declarations attempting to show he would be injured by the availability of premium tax credits. *See* R.24-1; R.24-2. Mr. Klemencic was a plaintiff in *NFIB v. Sebelius*, 132 S. Ct. 2566 (2012), *see* R.23-2, where he unsuccessfully argued that Congress lacks the power to give him the choice between obtaining minimum health coverage and paying a tax penalty pursuant to 26 U.S.C. § 5000A. In this suit, he contends that he should not have to make this choice because he would qualify for an "unaffordability exemption" in Section 5000A if premium tax credits were not available. *See* R.24-1, R.24-2. Because Mr. Klemencic expects to be eligible for such tax credits, however, his choice is to "purchase subsidized health insurance, estimated at approximately $20 per year" or $1.70 per month, or else "pay some higher amount per year as a Section 5000A tax penalty," Op. 11, estimated to be about $12 per month. R.46 at 45-46; *see also* R.29 at 15-16.

Although the district court concluded that Mr. Klemencic's submissions were sufficient to establish standing, *see* R.46 at 17, the court denied a preliminary injunction because Mr. Klemencic failed to demonstrate irreparable harm. *See id.* at 45-46. The court reasoned that a tax penalty of about $12 per month is neither significant nor irreparable, emphasizing that Mr. Klemencic can seek to recover any tax penalty

7

through a tax refund action. *See id.* at 46, 47.[1]

**2.** On cross-motions for summary judgment, the district court reaffirmed that Mr. Klemencic has standing, *see* Op. 10-11, and concluded that his claim is ripe and that he has a cause of action under the Administrative Procedure Act, notwithstanding the availability of a tax refund suit, *see id.* at 11-16.

Rejecting the claim on the merits, the district court explained that plaintiffs rely on subsection (b) of Section 36B, which sets the formula for calculating the amount of the premium tax credit. That subsection provides that the premium tax credit is calculated by adding up the "premium assistance amounts" for all "coverage months" in a given year; that the "premium assistance amount" is based in part on the cost of the monthly premium for the health plan that the taxpayer purchased "through an Exchange established by the State under [42 U.S.C. § 18031]"; and that a "coverage month" is defined as a month during which the taxpayer (or dependent) is enrolled in and pays the premium for a qualified health plan "that was enrolled in through an Exchange established by the State under [42 U.S.C. § 18031]." Op. 25-26 (quoting 26 U.S.C. § 36B(b)(1)-(2) & 36B(c)(2)(A)(i)). In plaintiffs' view, the phrase "established by

---

[1] Plaintiffs also submitted a declaration that attempted to show that the availability of premium tax credits for individuals would increase the risk that the plaintiff restaurants would incur tax liability under 26 U.S.C. § 4980H, which plaintiffs refer to as the "employer mandate." *See* R.24-3. The district court held that the Anti-Injunction Act bars this claim. *See* Op. 16-21. The large-employer tax authorized by Section 4980H will not be applied until 2015, *see* Notice 2013-45, 2013-31 I.R.B. 116, and plaintiffs do not rely on this potential tax liability as a reason for seeking the resolution of this appeal by March 31.

8

a State under [42 U.S.C. § 18031]" demonstrates that Congress did not make federal premium tax credits available on federally-run Exchanges.

The district court explained that the relevant provisions, read together, preclude this interpretation. Subsection (b) of Section 36B refers to an Exchange "established by a State under [42 U.S.C. § 18031]." The cross-referenced provision—42 U.S.C. § 18031—in turn provides that "[e]ach State shall, not later than January 1, 2014, establish an American Health Benefit Exchange (referred to in this title as an 'Exchange')." As the court observed, all parties, including plaintiffs, agree that 42 U.S.C. § 18031 "does not mean what it literally says; states are not actually required to 'establish' their own Exchanges." Op. 28 (quoting Pls.' SJ Opp. 14 ("*All* agree that states are free *not* to establish Exchanges.'") (plaintiffs' emphasis)). The Act provides, instead, "that a state may 'elect' to establish an Exchange and implement federal requirements for that Exchange," *ibid.* (quoting ACA § 1321, *codified at* 42 U.SC. § 18041), and that, if a state does not elect to do so, "'the Secretary shall . . . establish and operate *such Exchange* within the State and the Secretary shall take such actions as are necessary to implement such other requirements.'" *Ibid.* (quoting 42 U.S.C. § 18041(c)) (court's emphasis). "In other words, even where a state does not actually establish an Exchange, the federal government can create 'an Exchange established by the State under [42 U.S.C. § 18031]' *on behalf of* that state." Op. 28-29.

Other provisions, the court observed, confirm that premium tax credits are available on federally-run Exchanges. For example, subsection (f) of Section 36B

9

requires federally-run Exchanges to report information that enables the Internal Revenue Service to reduce a taxpayer's end-of-year premium tax credit by the amount of any advance payment of such a tax credit. *See* Op. 30-31. "Section 36B(f) would serve no purpose with respect to federally-facilitated Exchanges . . . if federal Exchanges were not authorized to deliver tax credits." *Id.* at 31.

Similarly, the court observed that plaintiffs' position cannot be reconciled with "Section 1312 of the Act, *codified at* 42 U.S.C. § 18032, [which] sets forth provisions regarding which individuals may purchase insurance from the Exchanges." Op. 31. "This section provides that only 'qualified individuals' may purchase health plans in the individual markets through the Exchanges, and requires that a 'qualified individual' be a person who 'resides in the State that established the Exchange.'" *Ibid.* (quoting 42 U.S.C. § 18032(f)(1)(A)(ii)). The court explained that, "[i]f this provision were read literally, no 'qualified individual' would exist in the thirty-four states with federally-facilitated Exchanges, as none of these states is a 'State that established [an] Exchange,'" and the "federal Exchanges would have no customers, and no purpose." *Ibid.* The court found no need to adopt "this absurd construction[.]" Op. 32. It explained that 42 U.S.C. § 18041—the provision that directs the Secretary to establish and operate an Exchange when a state declines to do so—"authoriz[es] the federal government to stand[] in the shoes of the state for purposes of Section 18032's residency requirement." Op. 32 (internal quotation marks and citation omitted).

The court further noted that plaintiffs' proposed reading of the statute would

10

undermine the "central purpose of the Act: to provide affordable health care to virtually all Americans."  Op. 33.  The court rejected plaintiffs' assertion that "Congress had another, equally pressing goal when it passed the ACA: convincing each state to set its own health insurance Exchange[.]"  *Ibid.*  The court explained that "a state-run Exchange is not an end in and of itself, but rather a mechanism intended to facilitate the purchase of affordable health insurance."  *Ibid.*  "It makes little sense to assume that Congress sacrificed nationwide availability of the tax credit—which plaintiff David Klemencic previously described as critical to the operation of the Exchanges"—"in an attempt to promote state-run Exchanges."  *Id.* at 34-35 (citing the private petitioners' brief on severability in *NFIB*).

"In sum," the court concluded that, "while there is more than one plausible reading of the challenged phrase in Section 36B when viewed in isolation, the cross-referenced sections, the surrounding provisions, and the ACA's structure and purpose all evince Congress's intent to make premium tax credits available on both state-run and federally-facilitated Exchanges."  Op. 35.  Thus, the court rejected plaintiffs' challenge to the Department of the Treasury's implementing regulations, concluding that "the intent of Congress is clear at *Chevron* step one."  *Ibid.*[2]

The court ruled in the alternative that, "[e]ven if the statute could be characterized as ambiguous—which it cannot—the [implementing Treasury

---

[2] The court also explained that the Act's legislative history confirmed its interpretation of the statute.  *See* Op. 35-37.

11

regulations] must be upheld at *Chevron* step two as a permissible construction of the statute." Op. 38 n.14. For the reasons previously set forth in the opinion, the court concluded that "the plain text of the statute, when considered in light of the statutory structure, the statute's purpose, and the limited legislative history, establish that the Secretary's interpretation is, at a minimum, entitled to deference." *Ibid.*; *see also* Op. 23-24 (rejecting plaintiffs' contention that *Chevron* deference does not apply).

## ARGUMENT

Plaintiffs have appealed the entry of final judgment, and they ask this Court to establish a severely compressed briefing schedule and to schedule oral argument "as soon as practicable, before March 31, 2014." Mot. 4. Plaintiffs do not provide any plausible justification for that request.

Plaintiffs contend that, if Mr. Klemencic's eligibility for premium tax credits remains uncertain by March 31, he will be faced with a "Hobson's choice" either to buy health coverage he does not want or else forgo health coverage and "potentially incur a penalty." Mot. 13-14. They declare that "[f]orcing people like Klemencic to either buy a product they do not want or risk a penalty is a classic form of irreparable harm." Mot. 14.

Even assuming for present purposes that that Mr. Klemencic's submissions are sufficient to establish standing and a ripe claim, they do not provide a reason for expedition. If Mr. Klemencic does not wish to pay an estimated $1.70 per month for health insurance, *see* Op. 11, he can incur a tax penalty estimated to be about $12 per

month, seek to recover the tax penalty in a taxpayer refund suit, and present his argument in that context. R.46 at 45-46. Thus, the district court explained in denying a preliminary injunction, Mr. Klemencic's harm is neither significant nor irreparable. *See id.* at 46, 47.[3]

Plaintiffs do not advance their argument by declaring that "the Nation desperately needs certainty" about the availability of premium tax credits on federally-run Exchanges, Mot. 10, and that "chaos" will result if the Court does not provide a "definitive resolution of the issue" by March 31. Mot. 11. An intermediate appellate court cannot "definitively" resolve an issue for the entire Nation and the potentially millions of tax-credit recipients not before the Court. In any event, the uncertainty that plaintiffs posit has no objective basis; the district court rightly concluded that their arguments have no merit. Finally, plaintiffs are wrong to assign special significance to March 31—the last day of the open enrollment period for 2014. By that date, most persons seeking to purchase insurance on the Exchanges by the March 31 deadline presumably will have done so.

---

[3] In *Sottera, Inc. v. FDA*, 627 F.3d 891 (D.C. Cir. 2010), which plaintiffs cite in their motion, *see* Mot. 14, this Court reaffirmed that, "[i]n showing irreparable harm, the injury to the party must 'be both certain and great.'" *Id.* at 898 (quoting *Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C. Cir.1985)).

## CONCLUSION

Plaintiffs' motion for expedition should be denied.

                                      Respectfully submitted,

                                      MARK B. STERN
                                      *s/ Alisa B. Klein*
                                      ALISA B. KLEIN
                                           (202) 514-1597
                                          *Attorneys, Appellate Staff*
                                          *Civil Division*
                                          *U.S. Department of Justice*
                                          *950 Pennsylvania Ave., NW, Rm. 7235*
                                          *Washington, DC 20530*

JANUARY 2014

# CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2014, I electronically filed the foregoing document with the Clerk of the Court by using the appellate CM/ECF system. I certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

　　　　　　　　　　　　　　　　　　*/s/ Alisa B. Klein*
　　　　　　　　　　　　　　　　　　Alisa B. Klein